**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| MICHELE L. TIEFFERT, *et al.,* | |
| *Plaintiffs,* | |
| v. | Civil Action No. 3:14-cv-609-HEH |
| EQUIFAX INFORMATION SERVICES, LLC, *et al.,* | |
| *Defendants.* | |

## <u>DEFENDANT NATIONSTAR MORTGAGE LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>

Defendant Nationstar Mortgage LLC ("Defendant" or "Nationstar"), by counsel, hereby submits this Memorandum of Law in support of its Motion to Dismiss Plaintiff's Complaint and states as follows:

## <u>INTRODUCTION AND FACTUAL BACKGROUND</u>[1]

On September 2, 2014, Plaintiff initiated this action by the filing of a Complaint against Nationstar as well as Defendants Equifax Information Services, LLC, Experian Information Solutions, Inc., Trans Union, LLC,[2] and Suntrust Mortgage, Inc. ("Suntrust") in this Court [Doc 1].

Without providing any details as to the loan or the property involved, Plaintiff alleges that she obtained a mortgage loan sometime in 2007 that eventually came to be serviced by Nationstar. Compl., ¶¶ 9-10. Plaintiff acknowledges that Nationstar is no longer the servicer of the subject mortgage loan. *Id.,* ¶ 17.

---

[1] For purposes of this Motion only, the well-pleaded allegations of Plaintiff's Complaint are taken as true. Nationstar does not admit the truth of such allegations by referring to them here.

[2] Nationstar will herein refer to Equifax Information Services, LLC, Experian Information Solutions, Inc., and Trans Union, LLC as the "credit reporting agencies" or the "CRAs."

1

Plaintiff alleges that she was never delinquent in paying her mortgage payments, but that she applied for loan modification assistance due to some financial difficulty. *Id., ¶¶* 11-12. Plaintiff avers that in November 2012, she was offered a temporary trial modification plan under which she was to make four consecutive modified monthly payments and she was informed that if she made those four trial payments, she would be approved for a final, permanent loan modification under the Home Affordable Mortgage Program ("HAMP"). *Id., ¶¶* 13-14.  Plaintiff alleges that she made the first three payments to Nationstar and the fourth to Suntrust because the servicing of the loan had been transferred from Nationstar to Suntrust by the time the fourth payment came due. *Id., ¶¶* 16-17, 20.

Plaintiff provides few details regarding the terms of the trial plan and neglects to attach it as an exhibit to her Complaint.  Nationstar attaches a true and correct copy of the November 2, 2012 trial period plan ("TPP") as <u>Exhibit A</u> hereto.  The Court may consider the TPP without converting this Motion to Dismiss to one for summary judgment so long as it is integral to the Complaint and authentic. *See Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  Because Plaintiff refers to the TPP in her Complaint and bases her claims upon it, it is integral to the Complaint and this Court may properly take judicial notice of its contents.

The TPP specifically provides as follows –

(1)     To accept the offer, Plaintiff must make new monthly "trial period payments" in place of her normal monthly mortgage payments (<u>Exhibit A</u>, p. 1);

(2)     Plaintiff was required to make four payments of $1,954.75 each from December 2012 through March 2013 (*Id.*);

(3)     With respect to "Credit Reporting" –

Nationstar will continue to report the delinquency status of [the] loan to credit reporting agencies as well as [Plaintiff's] entry into a Trial Period Plan in

2

accordance with the requirements of the Fair Credit Reporting Act and the Consumer Data Industry Association requirements.  **CREDIT SCORING COMPANIES GENERALLY CONSIDER THE ENTRY INTO A PLAN WITH REDUCED PAYMENTS AS AN INCREASED CREDIT RISK.  AS A RESULT, _ENTERING INTO A TRIAL PERIOD PLAN MAY ADVERSELY AFFECT YOUR CREDIT SCORE, PARTICULARLY IF YOU ARE CURRENT ON YOUR MORTGAGE_ OR OTHERWISE HAVE A GOOD CREDIT SCORE.** (*Id.*, p. 2) (emph. partially in orig., partially added);

(4)      "This is only a temporary Trial Period Plan.  ***[Plaintiff's] existing loan and loan requirements remain in effect and unchanged during the trial period.***" (*Id.*) (emph. added); and

(5)      "[Plaintiff] agree[s] that all terms and provisions of [Plaintiff's] current mortgage note and mortgage security instrument remain in full force and effect and [Plaintiff] will comply with those terms; and that nothing in the trial period plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the loan documents." (*Id.*, p. 4).

Despite the TPP's clear and unambiguous language that making the reduced trial payments did not constitute satisfaction of Plaintiff's original mortgage loan payment obligations and that this deficiency would be reported to the credit reporting agencies, Plaintiff now inexplicably brings this action against Nationstar complaining that it has done exactly what the agreement permits.

While Plaintiff brings claims against Suntrust for allegedly failing to provide her with a permanent modification and against the CRAs for purported violations of their credit reporting obligations under the Fair Credit Reporting Act ("FCRA"), the *gravamen* of Plaintiff's claims against Nationstar is her assertion that Nationstar has furnished incorrect information to the CRAs regarding her default and failed to correct that information and reasonably investigate her dispute. Compl., ¶ 25.

In addition, without specifying the date of the correspondence or attaching it to her Complaint, Plaintiff alleges that she submitted a qualified written request ("QWR") to Nationstar disputing that she was delinquent on the account. *Id.*, ¶ 23.  Although Plaintiff offers no details to

enable the Court to determine whether the correspondence she allegedly submitted actually constitutes a QWR as defined by the Real Estate Settlement Procedures Act ("RESPA"), Plaintiff contends that Nationstar violated RESPA by not correcting the account or reasonably investigating her dispute. *Id.,* ¶ 72.

However, because the explicit language in the TPP contradicts Plaintiff's FCRA and RESPA claims against Nationstar, Plaintiff fails to state any viable cause of action against Nationstar and the Complaint should be dismissed as to Nationstar with prejudice.

## STANDARD OF REVIEW

A district court should grant a motion to dismiss "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984). While the Court must take all factual allegations made in a complaint as true, the United States Supreme Court heightened a plaintiff's pleading requirements in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S Ct. 1955 (2007); *see also Eastern Shore Markets, Inc. v. JD Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). In order to survive a motion to dismiss, the "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Twombly*, 550 U.S. at 555. Indeed, the Fourth Circuit has concluded that the Supreme Court's decision in *Twombly* establishes a regime that is "more favorable to dismissal of a complaint" at the earliest stages of a case. *See Giarratano v. Johnson*, 521 F.3d 298, 306 n.3 (4th Cir. 2008).

Specifically, a plaintiff's claim must be dismissed if it fails to allege "enough facts to state a claim to relief that is plausible on its face" such that he has "nudged his claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility

when the plaintiff pleads factual content that allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

## ARGUMENT

### I.   PLAINTIFF'S UNDERLYING THEORY OF THE CASE LACKS MERIT.

The *gravamen* of Plaintiff's claims against Nationstar is that the latter has reported Plaintiff as delinquent on her loan payments even though Plaintiff made the trial plan payments called for by the TPP.  However, because the TPP explicitly sets forth that the trial payments do not satisfy Plaintiff's original mortgage repayment obligations and that the resulting default would in fact be reported to the CRAs, Plaintiff's entire underlying theory of the case is fundamentally deficient.

The TPP makes clear that compliance with its reduced payment schedule does not equate to compliance with the original loan payment terms. *See* Exhibit A, pp. 2, 4 ("[Plaintiff's] existing loan and loan requirements remain in effect and unchanged during the trial period… [Plaintiff] agree[s] that all terms and provisions of [Plaintiff's] current mortgage note and mortgage security instrument remain in full force and effect and [Plaintiff] will comply with those terms; and that nothing in the trial period plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the loan documents."

The TPP also makes clear that both the fact of the TPP and the delinquency status caused by Plaintiff's making reduced payments under the trial plan would be reported to the CRAs, expressly notifying Plaintiff that the TPP "may adversely affect your credit score, particularly if you are current on your mortgage." *Id.,* p. 2.

Accordingly, the reporting of Plaintiff's delinquency as alleged in this Complaint comports with the express requirements of the TPP.  Plaintiff has thus failed to state a claim for false credit reporting upon which relief may be granted.

## II.     PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF THE FCRA. (COA # 6)[3]

Plaintiff contends that Nationstar violated the provisions of the FCRA by (a) publishing inaccurate information regarding Plaintiff's account; (b) failing to fully and properly investigate Plaintiff's disputes; (c) failing to review all relevant information regarding Plaintiff's dispute; and (d) failing to correctly report the results of an accurate investigation. *See* Compl., ¶ 67.

"Congress enacted FCRA in 1970 to ensure fair and *accurate credit reporting*, promote efficiency in the banking system, and protect consumer privacy."  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007) (emphasis added).  Pursuant to § 1681s-2(b)(1)(A) of the FCRA, "[a]fter receiving notice … of a dispute with regard to the completeness or accuracy of any information provided…to a [CRA]," a furnisher of information "shall conduct an investigation with respect to the disputed information."  15 U.S.C. § 1681s-2(b)(1).  Courts have interpreted this statute to require a "furnisher of information" under the FCRA to conduct a "reasonable examination" or "careful inquiry" into a consumer dispute received from a CRA. *See Johnson v. MBNA America Bank*, 357 F.3d 426 (4th Cir. 2004)).  A furnisher must then take appropriate steps to modify, delete or permanently block any inaccurate information discovered through the investigation.  15 § 1681s-2(b)(1)(E).

"Thus, to bring a claim under § 1681s–2(b), a plaintiff must establish three elements:  (1) that he or she notified the consumer reporting agency of the disputed information, (2) that the consumer reporting agency notified the defendant furnisher of the dispute, and (3) that the

---

[3]     Plaintiff's first five causes of action are asserted exclusively against parties other than Nationstar.

furnisher then failed to [reasonably] investigate and modify the inaccurate information." *Alston v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 33860, 9-10 (D. Md. 2013) (quoting *Ausar-El v. Barclay Bank Del.,* 2012 U.S. Dist. LEXIS 106572, at *3 (D. Md. 2012)).

Here, for the reasons discussed above in Section I, Nationstar's reporting of Plaintiff's delinquency and the fact of the TPP cannot give rise to a cause of action.  Because the TPP explicitly sets forth that the trial payments do not satisfy Plaintiff's original mortgage repayment obligations and that the resulting default would in fact be reported to the CRAs, Plaintiff has wholly failed to allege a valid cause of action against Nationstar for inaccurate credit reporting.  Likewise, because there is no viable allegation of inaccurate credit reporting, Plaintiff has failed to state a cause of action against Nationstar for failing to make credit reporting corrections.

Moreover, Plaintiff's assertions that Nationstar failed to conduct a reasonable investigation or to review all relevant information regarding her dispute are nothing more than unsupported conclusory allegations.  Plaintiff sets forth absolutely no facts or allegations as to what Nationstar investigated or reviewed, how the investigation was not full or proper, or what relevant information was not reviewed by Nationstar.  Nationstar can only presume that Plaintiff bases her contentions of insufficient investigation and review exclusively upon her assertion that the dispute was not resolved in her favor.  In doing so, Plaintiff merely recites the elements of a furnisher FCRA claim without providing sufficient facts to support them.  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S. Ct. at 1949-50 (citations omitted).

Because Plaintiff offers no details regarding Nationstar's investigation or review, she fails to state a claim based upon the purported insufficiency of such investigation or review.  In

addition, the allegations of the Complaint taken together with the terms and provisions of the TPP confirm Plaintiff's failure to allege that Nationstar reported inaccurate information to the CRAs regarding the status of Plaintiff's mortgage loan account.  This inadequate cause of action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

### III.    PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF RESPA. (COA # 7)

Plaintiff alleges that she submitted a QWR to Nationstar "disputing the payments that they considered delinquent." *See* Compl., ¶ 23.   Plaintiff adds that Nationstar "provided delinquent information" to the CRAs within 60 days of its receipt of the purported QWR. *Id.,* ¶¶ 37, 73.   Finally, Plaintiff avers that Nationstar violated RESPA by "failing to (1) make appropriate corrections to Plaintiff's account and notify her in writing of the corrections; (2) investigate Plaintiff's account and provide her with a written clarification as to why they believed Plaintiff's account to be correct; and/or (3) investigate Plaintiff's account and either provide the requested information or provide an explanation as to why the requested information was unavailable." *Id.,* ¶ 72.

Title 12, Section 2605(e) of the United States Code provides that, "[f]or purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that -- (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."

RESPA requires that upon receipt of a "qualified written request" ("QWR"), a lender or servicer must acknowledge receipt of the request within 20 days and provide a formal response within 60 days. *See* 12 U.S.C. § 2605(e).  Assuming that a request is a valid QWR under RESPA, the statute provides that once a servicer receives a QWR, it may comply with the statute as follows:

> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes —
>
> (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
>
> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e)(2)(B).

Here, Plaintiff does not specify whether Nationstar responded to her purported QWR or not.  Rather, she merely recites the elements of a RESPA claim, alleging generally that Nationstar failed to investigate and correct the errors alleged in the Complaint.

In addition, Plaintiff does not specify when she submitted the purported QWR to Nationstar and this omission leaves the Court without sufficient basic information to determine if her correspondence constitutes a QWR and whether Nationstar is under any obligation to respond.  The QWR provisions of RESPA only apply to current loan servicers. 12 U.S.C. § 2605(e).  Given that Plaintiff acknowledges that Nationstar ceased servicing the loan in early 2013 (Compl., ¶ 17), if Nationstar was no longer the servicer when it received Plaintiff's purported QWR, it would no longer be subject to RESPA's provisions regarding QWRs any longer.  A prior servicer like Nationstar has absolutely no ability to make changes to the loan's accounting, if in fact any are warranted.

Just as with Plaintiff's insufficient count under the FCRA, Plaintiff's RESPA claim against Nationstar fails because Plaintiff has failed to adequately allege any credit reporting inaccuracy or any failure to make necessary credit reporting corrections.  For all of these reasons, Plaintiff fails to state a claim under RESPA and this count must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

Based upon the foregoing, this Court should dismiss Plaintiff's Complaint with prejudice as to Nationstar, and award Nationstar its attorneys' fees and costs incurred in defending this action.

This 29th day of October, 2014.                   Respectfully submitted,

                                                     NATIONSTAR MORTGAGE LLC


                                                     _____/s/_____
                                                     N. Patrick Lee (VSB No. 78735)
                                                     McGuireWoods LLP
                                                     1750 Tysons Boulevard, Suite 1800
                                                     McLean, Virginia 22102-4215
                                                     Telephone: (703) 712-5000
                                                     Facsimile: (703) 712-5252
                                                     plee@mcguirewoods.com
                                                     *Counsel for Defendant*
                                                     *Nationstar Mortgage LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2014, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which will send notification to counsel of record as follows:

Casey Shannon Nash
Matthew James Erausquin
Consumer Litigation Associates PC
1800 Diagonal Rd., Suite 600
Alexandria, VA  22314
Email: casey@clalegal.com
Email: matt@clalegal.com
*Counsel for Plaintiff*

David N. Anthony
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Email: david.anthony@troutmansanders.com
*Counsel for Experian Information Solutions, Inc.*

John W. Montgomery, Jr.
John W. Montgomery Jr. Attorney PLC
2116 Dabney Road, Suite A-1
Richmond, VA  23230
Email: jmontgomery@jwm-law.com
*Counsel for Equifax Information Services, LLC*

Michael R. Ward
Morris & Morris PC
11 South 12th Street, 5th Floor
Richmond, VA  23219
Email: mward@morrismorris.com
*Counsel for Trans Union LLC*

Robert D. Perrow
Daniel P. Watkins
Williams Mullen
200 South 10th Street, 16th Floor
Richmond, VA  23219
Email: bperrow@williamsmullen.com
Email: dwatkins@williamsmullen.com
*Counsel for SunTrust Mortgage, Inc.*

_____/s/_____
N. Patrick Lee (VSB No. 78735)