IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MICHELE L. TIEFFERT, )
)
Plaintiff, )
)
v. ) Civil Action No. 3:14CV609-HEH
)
EQUIFAX INFORMATION )
SERVICES, LLC, *et al.*, )
)
Defendants. )

## MEMORANDUM OPINION

Michele L. Tieffert ("Plaintiff") brought claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.*, alleging five causes of action against three credit reporting agencies and two causes of action against two loan servicers. The matter is presently before the Court on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by Defendant Nationstar Mortgage LLC ("Nationstar"). For the reasons set forth herein, Nationstar's Motion to Dismiss Plaintiff's Complaint will be granted in part and denied in part.

### I. BACKGROUND

This case arises from a mortgage loan obtained by Plaintiff in 2007 to which Nationstar thereafter acquired the servicing rights. (Compl. ¶¶ 9–10, ECF No. 1.) Plaintiff applied for a modification from Nationstar under the Department of Treasury's Home Affordable Modification Program ("HAMP"), and was approved in November 2012. (*Id.* at ¶¶ 11, 13.) Plaintiff was placed in a temporary trial period plan during

which time she was to make four consecutive modified payments. (*Id.* at ¶ 13.) She was informed by Nationstar that if she made the payments pursuant to the trial plan, she would be approved for a final HAMP modification. (*Id.* at ¶ 14.) Plaintiff successfully made the modified payments in the amount Nationstar directed her to pay. (*Id.* at ¶¶ 15–16.) Three of the modified payments were made to Nationstar. (*Id.* at ¶ 16.) On the date the fourth payment was due, Nationstar transferred the servicing rights of Plaintiff's loan to SunTrust Mortgage, Inc. ("SunTrust"). (*Id.* at ¶ 17.)

Pursuant to her agreement with Nationstar, Plaintiff continued making her modified payments, including the fourth trial plan payment. (*Id.* at ¶ 20.) Plaintiff informed SunTrust of the loan modification agreement with Nationstar. (*Id.* at ¶ 21.) Nevertheless, SunTrust considered Plaintiff's account in default, claiming that she owed back payments and fees of several thousand dollars, and reported her account as such on Plaintiff's credit reports. (*Id.* at ¶¶ 19, 22.) In response, Plaintiff submitted a Qualified Written Request to Nationstar and SunTrust, disputing the payments considered delinquent. (*Id.* at ¶ 23.) Plaintiff requested that her account be corrected to delete any late fees or other expenses, and that Nationstar and SunTrust provide her with certain loan history documents. (*Id.* at ¶ 24.) Plaintiff also notified the credit reporting agencies by sending written disputes with supporting documentation that her Nationstar and SunTrust accounts were—according to Plaintiff—inaccurately reporting as delinquent, as she had made all of her payments on time in the amount reflected in her loan modification agreement. (*Id.* at ¶ 26.) In accordance with their standard investigation procedures, the credit reporting agencies transmitted Plaintiff's disputes to Nationstar and SunTrust. (*Id.*

at ¶ 27.) Both Nationstar and SunTrust verified Plaintiff's accounts as reporting correctly. (*Id.* at ¶ 29.) This suit followed.

As pertinent here, Count Six of Plaintiff's Complaint alleges that Nationstar violated section 1681s-2(b) of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b), by publishing inaccurate information within Plaintiff's credit file, failing to fully and properly investigate Plaintiff's disputes, failing to review all relevant information regarding the same, and failing to correctly report the results of an accurate investigation. (Compl. ¶ 67.) Plaintiff also alleges, in Count Seven of her Complaint, that Nationstar violated section 2605(e) of the Real Estate Settlement Procedures Act ("RESPA"). 12 U.S.C. § 2605(e). Specifically, Plaintiff claims that Nationstar violated subsection (2) of section 2605(e) by failing to (1) make appropriate corrections to Plaintiff's account and notify her in writing of the corrections; (2) investigate Plaintiff's account and provide her with a written clarification as to why it believed Plaintiff's account to be correct; and (3) investigate Plaintiff's account and provide the requested information or provide an explanation as to why the requested information was unavailable. (Compl. ¶ 72.) Plaintiff also claims that Nationstar violated subsection (3) of section 2605(e) by providing delinquent information to credit reporting agencies during the sixty-day period following Nationstar's receipt of Plaintiff's Qualified Written Request. (*Id.* at ¶ 73.) As a result of Nationstar's conduct, Plaintiff alleges she suffered actual damages. (*Id.* at ¶¶ 67, 74.)

Nationstar filed a Motion to Dismiss Plaintiff's Complaint on October 29, 2014 (ECF No. 22). Plaintiff filed a Memorandum in Opposition (ECF No. 31), Nationstar replied (ECF No. 33), and the parties have waived oral argument (ECF Nos. 34, 35).

3

Thus, the motion is ripe for disposition.

## II. LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). To survive Rule 12(b)(6) scrutiny, a complaint only need contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193. The court must assume all well-pleaded factual allegations to be true and determine whether, when viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950; *see also Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

4

Generally, the district court does not consider extrinsic materials when evaluating a complaint under Rule 12(b)(6). The court may, however, consider "documents incorporated into the complaint by reference," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), as well as documents attached to a motion to dismiss, so long as they are integral to or explicitly relied upon in the complaint, and the authenticity of such documents is not disputed. *Philips v. Pitt Cnty Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *Phillips v. LCI Int'l, Inc.* 190 F.3d 609, 618 (4th Cir. 1999).

## III. DISCUSSION

At the outset, the Court notes that it will exclude from consideration the exhibits attached to the parties' briefs submitted in support of their respective positions. In support of its Motion to Dismiss, Nationstar attached the terms of the trial period plan agreed to by the parties. (Def.'s Mem. Support, Ex. A., ECF No. 23-1.) While Plaintiff does not dispute the authenticity of Nationstar's exhibit, she contends that the terms of the plan present an incomplete picture when reviewed in isolation. (Pl.'s Mem. Opp'n at 4–5, ECF No. 31.) Plaintiff appended to her brief two exhibits which she contends are necessary to comprehend the trial period plan: (1) Fannie Mae HAMP Servicing Guide Announcement, and (2) the Consumer Data Industry Association's Mortgage & Home Equity Reporting Guidelines. (Pl.'s Mem. Opp'n, Ex. 1–2, ECF Nos. 31-1, 31-2) Consideration of these three documents would require the Court to engage in fact-finding that is improper and unnecessary to resolve a motion under Rule 12(b)(6). The Court will not convert Nationstar's Motion to Dismiss into a motion for summary judgment, and declines to consider the exhibits submitted by the parties.

A.  **Fair Credit Reporting Act**

The FCRA places various requirements on consumer credit reporting agencies, furnishers of credit information to consumer credit reporting agencies, and users of consumer credit reports with the goals of ensuring fair and accurate credit reporting, promoting efficiency in the banking system, and protecting consumer privacy. *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 147 (4th Cir. 2008) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)). Pursuant to section 1681s-2(b) of the FCRA, a furnisher, as a supplier of information to credit reporting agencies,[1] may be held liable for failing to conduct a reasonable investigation into a consumer's claim after receiving notice from a credit reporting agency that the consumer has disputed the accuracy of the information reported by the furnisher. 15 U.S.C. § 1681s-2(b); *see also Johnson v. MBNA America Bank, N.A.*, 357 F.3d 426, 431 (4th Cir. 2004). A furnisher, however, cannot be liable under section 1681s-2, unless it has received notice from a credit reporting agency that a consumer disputes the information reported. After receiving such notice, the FCRA requires furnishers "to conduct a reasonable investigation of their records to determine whether the disputed information can be verified." *Johnson*, 357 F.3d at 431. The furnisher must report the results of the investigation to the credit reporting agency. 15 U.S.C. § 1681s-2(b)(1)(C). If the investigation reveals that the disputed information is inaccurate, incomplete, or cannot be verified, the furnisher must report its findings to all other credit reporting agencies to which it distributed the

---

[1] The FCRA defines a furnisher as one who "regularly and in the ordinary course of business furnishes information to one or more credit reporting agencies about the person's transactions or experiences with any consumer." 15 U.S.C. § 1681s-2(a)(2).

6

information, as well as modify, delete, or permanently block the reporting of that item of information. 15 U.S.C. § 1681s-2(b)(1)(D)–(E).

To properly plead a claim under section 1681s-2 of the FCRA, a plaintiff must allege that (1) she notified the credit reporting agency of the disputed information; (2) the credit reporting agency notified the furnisher of the consumer's dispute; and (3) the furnisher failed to reasonably investigate the disputed information and take appropriate action based on its findings. *Johnson*, 357 F.3d at 431; *Taylor v. First Premier Bank*, 841 F. Supp. 2d 931, 933 (E.D. Va. Jan. 11, 2012). Plaintiff's Complaint satisfies the first and second elements. Plaintiff alleges that she filed written disputes regarding her allegedly delinquent mortgage with the credit reporting agencies, and that those agencies notified Nationstar of her claim.[2]

With respect to the third element, Plaintiff further alleges that in response to her disputes, Nationstar verified that Plaintiff's account was reporting correctly. Plaintiff disagrees with Nationstar's conclusion, and contends that if Nationstar had conducted a reasonable investigation of her dispute, the inaccuracies in the information Nationstar provided to the credit reporting agencies about Plaintiff's mortgage loan would have been discovered. According to Nationstar, dismissal of Plaintiff's FCRA claim is appropriate because the information it reported to the credit reporting agencies regarding Plaintiff's mortgage loan was accurate.

Although the accuracy of the reported information may weigh in favor of Nationstar

---

[2] The parties do not dispute that Nationstar qualifies as a furnisher under the FCRA. *See* 15 U.S.C. § 1681s-2(a)(2).

having conducted a reasonable investigation, accuracy is not dispositive of Plaintiff's FCRA claim.[3] The focus of a claim brought under section 1681s-2(b) is whether the furnisher—here, Nationstar—conducted a reasonable investigation and took appropriate action based on the results. "[W]hether a defendant's investigation is reasonable is usually a factual question reserved for trial." *Aviles v. Equifax Inform. Servs.*, 521 F. Supp.2d 519, 523 (E.D. Va. 2007). At this stage, Plaintiff has pled facts sufficient to allege a plausible violation of section 1681s-2(b) of the FCRA by Nationstar.

## B. Real Estate Settlement Procedures Act

Plaintiff's second claim against Nationstar arises from section 2605(e) of the RESPA, which establishes the duty of loan servicers to respond to borrower inquiries. *See* 12 U.S.C. § 2605(e). Specifically, these duties are triggered when the servicer "receives a qualified written request from the borrower." 12 U.S.C. § 2605(e)(1)(A). The RESPA defines a Qualified Written Request ("QWR") as:

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that . . . (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).

After receipt of a QWR, the servicer is required to conduct an investigation into the changes requested by the borrower, make appropriate corrections to the borrower's

---

[3] The Court takes no position as to the accuracy of the information Nationstar reported to the credit reporting agencies regarding Plaintiff's mortgage loan. Any finding as to accuracy would be premature, as discovery is necessary to develop a more fulsome record.

8

account, and provide a written explanation or clarification as to the results of the investigation, which must include the name and telephone number of a representative who can answer any questions about the account. 12 U.S.C. § 2605(e)(2); *see also Fedewa v. J.P. Morgan Chase Bank*, 921 F. Supp. 2d 504, 510 (E.D. Va. 2013). During the sixty-day period following the servicer's receipt of a QWR, the servicer may not provide to a credit reporting agency any information relating to that disputed in the QWR. 12 U.S.C. § 2605(e)(3). In addition to showing that the borrower's request meets the definition of a QWR and that the servicer failed to perform its duties, the plaintiff must show actual damages and "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of [section 2605]." 12 U.S.C. § 2605(f)(1).

To survive Rule 12(b)(6) scrutiny, a plaintiff must allege facts to support that: (1) the defendant is a loan servicer, (2) the plaintiff sent the defendant a valid QWR, (3) the defendant failed to adequately respond within the statutory period, and (4) the plaintiff is entitled to actual or statutory damages. *See Bowman v. Vantium Capital, Inc.*, 2014 U.S. Dist. LEXIS 3558, at *9–10 (W.D. Va. Jan. 13, 2014). Nationstar argues, *inter alia*, that Plaintiff's RESPA claim should be dismissed because she did not plead sufficient facts to plausibly allege that her correspondence to Nationstar constitutes a valid QWR, triggering a duty to respond under the RESPA. The Court is inclined to agree.

Although Plaintiff alleges that she submitted a QWR to Nationstar, the Complaint contains only vague details as to the substantive content of the request. *See Fedewa*, 921 F. Supp. 2d at 510. Plaintiff alleges only that her correspondence disputed the payments

9

Nationstar considered delinquent, requested that her account be corrected, and sought copies of loan history documents. Lacking particular details as to the substance of the alleged QWR, Plaintiff's allegations are insufficient to indicate whether the form of her request comported with the requirements of the RESPA. *Id.*

Plaintiff's Complaint also does not specify when the purported QWR was sent. Nor does it specify when or if Nationstar received her correspondence. *Id.*; *Caballero v. Am. Mortg. Network*, 2011 U.S. Dist. LEXIS 87210, at *19 (E.D. Va. Aug. 8, 2011). When Plaintiff sent the QWR and whether Nationstar received the QWR relate to Nationstar's obligation to respond under RESPA, but not in the manner Nationstar suggests. Nationstar argues that once it ceased servicing Plaintiff's loan, it was no longer under any obligation to respond to Plaintiff's QWR. As Plaintiff points out, so long as the QWR is received within one year after Nationstar ceased servicing the loan, it is obligated to respond. *See* 12 C.F.R. §§ 1024.35–1024.36; *see also Bowman*, 2014 U.S. Dist. LEXIS 3558, at *10–11 n.5. Moreover, Nationstar's receipt of the QWR triggers its duty to respond, and such response must be made within the statutorily prescribed timeframe. 12 U.S.C. § 2605(e)(1)(A).

Plaintiff urges that her failure to include the date on which the QWR was submitted is not fatal to her claim because when the purported QWR was sent can be inferred from the allegations in her Complaint. (Pl.'s Mem. Opp'n at 12–13.) In support of her position, Plaintiff cites this Court's decision in *Bourdelais v. JPMorgan Chase Bank, N.A.*, 2012 U.S. Dist. LEXIS 158508 (E.D. Va. Nov. 5, 2012). In that case, however, the complaint more particularly alleged the timeframe within which the plaintiff's QWR was

sent to the servicer—within two years prior to filing suit. *Bourdelais*, 2012 U.S. Dist. LEXIS 158508, at *26. Plaintiff's Complaint does not. Furthermore, the facts alleged in *Bourdelais* as to the plaintiff's QWR were more numerous and specific, allowing the Court to find that the plaintiff plausibly alleged the submission of a valid QWR. *Id.* at *26–27; *see also Salehi v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 80738, at *17–18 (E.D. Va. June 11, 2012) (finding alleged QWR sufficient to survive motion to dismiss "because it is a written correspondence that includes information that allows the servicer . . . to identify the name and account of Plaintiff and it also details Plaintiff's belief that the account is in error").

Additionally, as far as this Court can tell, *Bourdelais* is the only case in this district in which a court found that the plaintiff adequately pled the submission of a *valid* QWR without the purported QWR having been incorporated by reference into the pleadings. *See, e.g., Bowman*, 2014 U.S. Dist. LEXIS 3558, at *9–10 (finding plaintiff complied with QWR requirements upon review of exhibit attached to complaint); *Salehi*, 2012 U.S. Dist. LEXIS 80738, at *17–18 (holding letter attached as exhibit to complaint constituted a QWR sufficient to survive motion to dismiss); *cf. Luther v. Wells Fargo Bank*, 2012 U.S. Dist. LEXIS 142538 (W.D. Va. Aug. 6, 2012) (holding plaintiff's self-identified QWRs attached to complaint do not satisfy statutory definition of QWR). To be clear, this Court does not hold as a general proposition that incorporation of the QWR is required to adequately plead the submission of a valid QWR. Nevertheless, Plaintiff's bare allegation that she submitted a QWR, given the sparse details of its contents and failure to attach the correspondence to her Complaint, is too conclusory, and therefore, insufficient to plead the

existence of a *valid* QWR.

## IV. CONCLUSION

For the foregoing reasons, Nationstar's Motion to Dismiss Plaintiff's Complaint will be denied with respect to Count Six of Plaintiff's Complaint, and granted with respect to Count Seven. An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: Dec. 19, 2014
Richmond, Virginia